TRINA A. HIGGINS, United States Attorney (#7349)
BRIAN WILLIAMS, Assistant United States Attorney (#10779)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. SHELVIE GOODWIN, Defendant. | INDICTMENT<br><br>Counts 1-6 18 U.S.C. § 1343 (Wire Fraud)<br><br>Counts 7-10 18 U.S.C. § 1957 (Money Laundering)<br><br>Case: 2:23-cr-00445<br>Assigned To : Kimball, Dale A.<br>Assign. Date : 12/5/2023<br>Description: USA v. Goodwin |

The Grand Jury charges SHELVIE GOODWIN, defendant herein, as follows:

I. **BACKGROUND**

At all times relevant to this Felony Indictment:

1. Defendant SHELVIE GOODWIN ("GOODWIN") was a resident of Draper, Utah.

2. GOODWIN owned and operated two separate companies, International PNR, LLC ("International PNR") which was incorporated in Phoenix, AZ and at all times had business bank accounts in Utah and later changed its management location to Utah, and Kodiak Mining ("Kodiak Mining") which was a Utah based company.

3. During the early part of 2021 GOODWIN applied for three different PPP loans on behalf of International PNR and Kodiak Mining, defrauding the COVID-19 relief program dubbed the Paycheck Protection Program out of approximately $648,457.

**SBA Paycheck Protection Program**

4. The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

5. As part of this effort, the SBA enables and provides for loans through banks, credit unions and other lenders. These loans have government-backed guarantees. In addition to traditional SBA funding programs, The CARES Act, which was signed into law in March 2020, established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak. One of these programs was the SBA's Paycheck Protection Program ("PPP"). Additional PPP funding was legislatively authorized on or about December 27, 2020, and March 11, 2021.

6. PPP loans were designed to provide a direct incentive for small businesses to keep their workers on the payroll. Under this program, the SBA would forgive any loan up to 100 percent if the borrower established it utilized 60 percent of the loan on payroll costs in the 24-week period post-disbursement, with the remaining 40 percent going toward covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures. Whatever portion is not forgiven is serviced as a loan.

7. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan, including that the business was in operation on February 15, 2020 and either had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on a "Form 1099-MISC." Specifically, in the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.

8. In addition, a business applying for a PPP loan was required to provide documentation showing its payroll expenses. This payroll information was material to the application because, pursuant to statutory requirements and implementing regulations, the amount of the loan that typically could be approved was a function of the applicant's historical payroll costs, consisting of compensation to its employees whose principal place of residence was the United States, subject to certain exclusions. Once approved for a PPP loan by a participating third-party lender, small businesses could receive loans of up to $10,000,000.

9. A PPP loan application was processed by the third-party participating lender with whom the application was filed. If a PPP loan application was approved, the participating lender would fund the PPP loan; to encourage PPP loans to be issued, the loan was guaranteed by the SBA. Data from the application, including information from the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

10. After the lender funded the PPP loan to the borrower, the lender submitted disbursement details into the SBA E-Tran system with servers located in Sterling, VA. The SBA's Denver Finance Center, located in Denver, Colorado, created payment files and authorized payments of the PPP processing fee to the lender through the Financial Management System (FMS) to the Treasury. The primary server for the FMS is in Sterling, VA. The PPP processing fee varied depending on the amount of the loan. Once created, the payment files were then transmitted via wire to the U.S. Treasury disbursing office in Kansas City, Missouri, who would, in turn, send instructions for payment of funds to the Federal Reserve Bank ACH processing site in East Rutherford, New Jersey.

11. The proceeds of a PPP loan could be used only for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

## II. THE SCHEME AND ARTIFICE TO DEFRAUD

12. Beginning on or around February 5, 2021 and continuing until at least October 4, 2022 within the District of Utah and elsewhere,

**SHELVIE GOODWIN**

defendant herein, knowingly devised and executed a scheme and artifice to defraud and sought to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and omissions of material facts.

13. In executing and attempting to execute the scheme and artifice to defraud, and in

4

furtherance thereof, defendant GOODWIN:

    a. knowingly transmitted and caused to be transmitted, wire communications in interstate commerce in violation of 18 U.S.C. § 1343 (Wire Fraud); and

    b. knowingly engaged and attempted to engage in monetary transactions in criminally derived property of a value greater than $10,000 and derived from specified unlawful activity (Wire Fraud), to wit, proceeds of fraudulently obtained money, in violation of 18 U.S.C. § 1957 (Money Laundering).

### III. THE OBJECT OF THE SCHEME AND ARTIFICE TO DEFRAUD

14. It was the object of the scheme and artifice to defraud for defendant GOODWIN to obtain money from the SBA's Paycheck Protection Program, through false statements, misrepresentations, deception, and omissions of material facts, and thereafter to divert the money for GOODWIN's own purposes.

### IV. MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

15. In execution and furtherance of the scheme and artifice to defraud, defendant GOODWIN did *inter alia* the following:

#### Kodiak Mining - 1st PPP Loan

16. Defendant GOODWIN applied for a PPP loan through J.P. Morgan Chase Bank ("Chase Bank") on February 5, 2021 on behalf of Kodiak Mining, seeking approximately $45,000.

17. Defendant GOODWIN made, or caused to be made, one or more of the following false, fraudulent, and material representations:

    a. Kodiak Mining had an average monthly payroll of $18,000 for two employees for 2021; when in fact, it did not;

    b. The IRS Form 941 Goodwin submitted along with the PPP-Loan Application reflected that Kodiak Mining had paid 2 employees wages, tips, and other compensation totaling $54,000 in the first quarter of 2020; when in fact, this was not accurate;

5

c. The IRS Form 941 Goodwin submitted along with the PPP-Loan Application reflected that Kodiak Mining had paid 2 employees wages, tips, and other compensation totaling $54,000 in the second quarter of 2020; when in fact, this was not accurate;

d. The IRS Form 941 Goodwin submitted along with the PPP-Loan Application reflected that Kodiak Mining had paid 2 employees wages, tips, and other compensation totaling $54,000 in the third quarter of 2020; when in fact, this was not accurate;

e. The IRS Form 941 Goodwin submitted along with the PPP-Loan Application reflected that Kodiak Mining had paid 2 employees wages, tips, and other compensation totaling $54,000 in the fourth quarter of 2020; when in fact, this was not accurate; and

f. GOODWIN also acknowledged by the digital initials "SG" in the application that all the information she provided was true and accurate, when in fact it was not accurate.

**Kodiak Mining - 2nd PPP Loan**

18. Defendant GOODWIN applied for a second PPP loan with Chase Bank on behalf of Kodiak Mining on May 5, 2021.

19. Defendant GOODWIN made, or caused to be made, one or more of the following false, fraudulent, and material representations:

a. Kodiak Mining had an average monthly payroll of $18,000 for 2 employees, when it did not;

b. The IRS Form 941 Goodwin submitted along with the PPP-Loan Application reflected that Kodiak Mining had paid 2 employees wages, tips, and other compensation totaling $54,000 in the first quarter of 2020; when in fact, this was not accurate;

c. The IRS Form 941 Goodwin submitted along with the PPP-Loan Application reflected that Kodiak Mining had paid 2 employees wages, tips, and other compensation totaling $54,000 in the second quarter of 2020; when in fact, this was not accurate;

d. The IRS Form 941 Goodwin submitted along with the PPP-Loan Application reflected that Kodiak Mining had paid 2 employees wages, tips, and other compensation totaling $54,000 in the third quarter of 2020; when in fact, this was not accurate;

e. The IRS Form 941 Goodwin submitted along with the PPP-Loan Application reflected that Kodiak Mining had paid 2 employees wages, tips, and other compensation totaling $54,000 in the fourth quarter of 2020; when in fact, this was not accurate; and

f. GOODWIN also acknowledged by the digital initials "SG" in the application that all the information she provided was true and accurate, when in fact, it was not accurate.

**Kodiak Mining - Loan Forgiveness Application 1st PPP Loan**

20. On or about January 6, 2022, GOODWIN completed and submitted a PPP-Loan Forgiveness Application to Chase Bank for forgiveness of the entire approximately $45,000 in PPP-Loan proceeds from the first PPP Loan obtained by Kodiak Mining.

21. Defendant GOODWIN made, or caused to be made, one or more of the following false, fraudulent, and material representations:

a. The dollar amount for which GOODWIN requested forgiveness ($45,000) was used to pay business costs that were eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures); when in fact, the money was used to pay for other unauthorized expenses;

b. The Borrower had accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower was requesting forgiveness; when in fact, GOODWIN had not;

c. The tax documents GOODWIN had submitted to the Lender (Chase Bank) were consistent with those the Borrower had submitted or would submit to the IRS and/or state tax or workforce agency; when in fact, they were not;

d. GOODWIN certified the funds were used for payroll costs equal to at least 60% of the forgiveness amount; when in fact they were not; and

e. GOODWIN also indicated that the amount used did not exceed 2.5 months' worth of compensation received during the year used to calculate the PPP loan amount capped at $20,833 per individual in total across all businesses.

7

### Kodiak Mining - Loan Forgiveness Application 2nd PPP Loan

22. On or about November 2, 2021, GOODWIN completed and submitted a PPP-Loan Forgiveness Application to Chase Bank for forgiveness of the entire approximately $45,000 in PPP-Loan proceeds from the 2nd PPP Loan obtained by Kodiak Mining.

23. Defendant GOODWIN made, or caused to be made, one or more of the following false, fraudulent, and material representations:

   a. The dollar amount for which GOODWIN requested forgiveness ($45,000) was used to pay business costs that were eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures); when in fact, the money was used to pay for other unauthorized expenses;

   b. The Borrower had accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower was requesting forgiveness; when in fact, GOODWIN had not;

   c. The tax documents GOODWIN had submitted to the Lender (Chase Bank) were consistent with those the Borrower had submitted or would submit to the IRS and/or state tax or workforce agency; when in fact, they were not;

   d. GOODWIN certified the funds were used for payroll costs equal to at least 60% of the forgiveness amount; when in fact they were not; and

   e. GOODWIN also indicated that the amount used did not exceed 2.5 months' worth of compensation received during the year used to calculate the PPP loan amount capped at $20,833 per individual in total across all businesses.

### International PNR - PPP Loan

24. Defendant GOODWIN applied for a PPP loan through A10 Capital, LLC ("A10 Capital") on April 16, 2021 on behalf of International PNR, seeking approximately $558,458.

25. Defendant GOODWIN made, or caused to be made, one or more of the following false, fraudulent, and material representations:

   a. International PNR had 28 employees; when in fact, it did not;

8

b. International PNR had an average monthly payroll of $215,058.08; when in fact, it did not;

c. The IRS Form W-3 GOODWIN submitted along with the PPP-Loan Application reflected that International PNR had paid 28 employees wages, tips, and other compensation totaling $2,580,601.00 in 2020; when in fact, this was not accurate;

d. GOODWIN submitted a revenue comparison between 2019 ($4,361,993.90) with 2020 of ($3,254,100.00), a revenue decrease between the two years of 25.4%; when in fact, this was not accurate; and

e. GOODWIN also acknowledged by the digital initials "SG" in the application that all the information he provided was true and accurate; when in fact, it was not accurate.

26. Defendant GOODWIN had the loan proceeds of $558,458 wired to her Chase Bank account in Draper, Utah on April 29, 2021, and provided a Utah driver's license with a Draper address as part of her application.

### International PNR - Forgiveness Application

27. On or about October 4, 2022, GOODWIN completed and submitted a PPP-Loan Forgiveness Application to A10 Capital for forgiveness of the entire approximately $558,457 in PPP-Loan proceeds from the PPP loan GOODWIN obtained for International PNR.

28. Defendant GOODWIN made, or caused to be made, one or more of the following false, fraudulent, and material representations:

a. International PNR had 28 employees at the time of the PPP-Loan application and at the time of the PPP-Loan Forgiveness Application; when in fact, it did not have 28 employees at either time;

b. International PNR had payroll costs of $594,368 between April 26, 2021 and October 1, 2021; when in fact, it did not;

c. The dollar amount for which International PNR requested forgiveness ($558,457) was used to pay business costs that were eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations

expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures); when in fact, the money was used to pay for other unauthorized expenses;

d. The Borrower had accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower was requesting forgiveness; when in fact, it had not; and

e. The information provided in the PPP-Loan Forgiveness Application and the information provided in all supporting documents and forms was true and correct in all material respects; when in fact, it was not.

## COUNTS 1-6
## 18 U.S.C. § 1343
## (Wire Fraud)

29. All the factual allegations set forth above are incorporated by reference and realleged as though fully set forth herein.

30. On or about the dates set forth below, in the District of Utah and elsewhere,

**SHELVIE GOODWIN**

defendant herein, for the purposes of executing and in furtherance of the scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and omissions of material facts, did knowingly transmit and cause to be transmitted the following items by means of wire communication in interstate commerce described below:

| Counts | Dates (on or about) | Description of Wire |
|---|---|---|
| 1 | February 5, 2021 | GOODWIN transmitted false information through interstate wire communications on behalf of Kodiak Mining to Chase Bank in order to obtain a PPP business loan in the amount of $45,000 |
| 2 | May 5, 2021 | GOODWIN transmitted false information on behalf of Kodiak Mining through interstate wire communications to Chase Bank when applying for a PPP business loan in the amount of $45,000 |
| 3 | January 6, 2022 | GOODWIN transmitted false information through interstate wire communications on behalf of Kodiak Mining to Chase Bank when applying for forgiveness of the 1st PPP business loan for Kodiak Mining in the amount of $45,000 |

10

| 4 | November 2, 2021 | GOODWIN transmitted false information on behalf of Kodiak Mining through interstate wire communications to Chase Bank on behalf of Kodiak Mining when applying for forgiveness of a 2nd PPP business loan of $45,000 |
| 5 | April 16, 2021 | GOODWIN transmitted false information on behalf of International PNR through interstate wire communications to A10 Capital when applying for a PPP business loan in the amount of $558,457 |
| 6 | October 4, 2022 | GOODWIN transmitted false information through interstate wire communications on behalf of International PNR to A10 Capital when applying for forgiveness of the PPP business loan obtained by International PNR in the amount of $558,457 |

All in violation of 18 U.S.C. § 1343.

## COUNTS 7-10
## 18 U.S.C. § 1957
## (Money Laundering)

31. All the factual allegations set forth above are incorporated by reference and realleged as though fully set forth herein.

32. On or about the dates set forth below, in the District of Utah and elsewhere,

**SHELVIE GOODWIN**

did knowingly engage and attempt to engage in the following monetary transactions by, through, and to, a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, that was derived from a specified unlawful activity that constitutes a violation of 18 U.S.C. § 1343, in instances, including but not limited to each count below:

| Counts | Date (on or about) | Monetary Transactions |
| --- | --- | --- |
| 7 | June 7, 2021 | GOODWIN did transfer $21,500 in proceeds from the PPP Loan provided to Kodiak Mining from the Chase Bank Account for Kodiak Mining to Atlanta Plastic Surgery Specialists |
| 8 | June 15, 2021 | GOODWIN did transfer $335,074.20 in proceeds from the PPP loan provided to International PNR from a Chase Bank Account for International PNR on June 15, 2021 to a Key |

| | | |
|---|---|---|
| | | Bank account ending in 8463 registered to Integrated Development Group |
| 9 | July 26, 2021 | GOODWIN did transfer $20,500 in proceeds from the PPP loan obtained by International PNR from a Chase Bank account for International PNR to an individual for "investment payback" |
| 10 | September 15, 2021 | GOODWIN did transfer $192,705 in proceeds from the PPP loan obtained by PNR International from a Chase Bank account for PNR International to the Chase Bank Account for Kodiak Mining |

All in violation of 18 U.S.C. § 1957.

A TRUE BILL:

/S/
_____
FOREPERSON OF GRAND JURY

TRINA A. HIGGINS
United States Attorney

_____
BRIAN WILLIAMS
Assistant United States Attorney